JAN T. CHILTON (State Bar No. 47582)
jan.chilton@stinson.com
STINSON LLP
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: 415.398.3344
Facsimile: 415.956.0439

Attorneys for PHH Mortgage Corporation,
U.S. Bank National Association, as Trustee,
Mortgage Electronic Registration Systems, Inc.,
and Western Progressive, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD JAMES RUNNALS,<br><br>        Plaintiff,<br><br>    v.<br><br>PHH MORTGAGE CORPORATION, et al.,<br><br>        Defendants. | Case No. 3:26-cv-00105-JD<br><br>**OPPOSITION TO REQUEST FOR JUDICIAL NOTICE**<br><br>Judge:    James Donato<br><br>Trial Date:        TBD |

## TABLE OF CONTENTS

*Page*

I.      INTRODUCTION ..................................................................................................... 1

II.     THE REQUESTS ARE UNTIMELY ...................................................................... 1

III.    THE COURT SHOULD DENY JUDICIAL NOTICE OF FACTS
        REGARDING AUTHORITY TO SIGN THE ASSIGNMENT ......................................... 2

        A.    Runnals Improperly Requests Notice From Questionable Sources ........................ 2

        B.    Runnals Relies On Illogical, Disputable Inferences ................................................ 3

        C.    Runnals' New "Lack Of Authority To Sign" Theory Is Legally Unsound ............. 6

              1.    Ocwen's Employee May Serve As An Assistant Secretary Of MERS ....... 6

              2.    An Unauthorized Signature Does Not Render An Assignment Void ......... 7

IV.     RUNNALS' OTHER THEORIES ARE EQUALLY UNSOUND .................................... 8

        A.    MERS Properly Assigned Runnals' Deed Of Trust After IndyMac Was Closed ... 8

        B.    The Trustee's Passive Role Proves Nothing ........................................................... 8

V.      CONCLUSION ........................................................................................................ 9

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Bogosian v. CR Title Services, Inc.*,
2011 WL 2039368 (C.D. Cal. May 18, 2011)..................................................................... 7

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011)........................................................................................... 7

*Chua v. IB Prop. Holdings, LLC*,
No. 11-cv-5894, 2011 WL 3322884 (C.D. Cal. Aug. 1, 2011)........................................ 7

*Diediker v. Peelle Fin. Corp.*,
60 Cal. App. 4th 288 (1997).............................................................................................. 7

*Fireman's Fund Ins. Co. v. Wilburn Boat Co.*,
259 F.2d 662 (5th Cir. 1958)............................................................................................. 2

*Gibbes v. Rose Hill Plantation Dev. Co.*,
794 F. Supp. 1327 (D.S.C. 1992) ...................................................................................... 1

*Hackleman v. Provident Funding Assocs., LP*,
No. 12-cv-6064, 2012 WL 12888841 (C.D. Cal. Dec. 13, 2012) .................................... 7

*Haft v. Dart Grp. Corp.*,
841 F. Supp. 549 (D. Del. 1993) ....................................................................................... 6

*Hennessy v. Penril Datacomm Networks, Inc.*,
69 F.3d 1344 (7th Cir. 1995)............................................................................................. 3

*Herrera v. Fed. Nat'l Mortgage Ass'n*,
205 Cal. App. 4th 1495 (2012).......................................................................................... 7

*Jackson v. Mortg. Elec. Registration Sys., Inc.*,
770 N.W.2d 487 (Minn. 2009) .......................................................................................... 7

*Lowery v. Bank of Am., N.A.*,
No. 04-12-00729-CV, 2013 WL 5762227 (Tex. App. Oct. 23, 2013)............................ 5, 6

*Mendoza v. JPMorgan Chase Bank, N.A.*,
6 Cal. App. 5th 802 (2016)................................................................................................ 7

*Quach v. Bank of Am., Nat. Ass'n*,
No. 5:12-cv-5037 EJD, 2012 WL 4498873 (N.D. Cal. Sept. 28, 2012) .......................... 7

*Rakestraw v. Rodrigues*,
8 Cal. 3d 67 ....................................................................................................................... 7

*In re S.S. Retail Stores Corp.*,
211 B.R. 699 (9th Cir. BAP 1997)..................................................................................... 6

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Snukal v. Flightways Mfg., Inc.*,
    23 Cal. 4th 754 (2000)................................................................................................................ 6

*Yvanova v. New Century Mortg. Corp.*,
    62 Cal. 4th 919 (2016)................................................................................................................ 7

*Statutes*

California Corporations Code
    Section 312 ................................................................................................................................. 6
    Section 313 ................................................................................................................................. 6

Delaware Code
    Title 8, section 142 ..................................................................................................................... 6

*Other Authorities*

Adam J. Levitin & Tara Twomey, *Mortgage Servicing*,
    28 Yale J. on Reg. 1 (2011)........................................................................................................ 9

Federal Rules of Evidence
    Rule 201 .................................................................................................................................. 1, 2

Diane E. Thompson, *Foreclosing Modifications: How Servicer Incentives
    Discourage Loan Modifications,* 86 Wash. L. Rev. 755 (2011) ............................................... 9

# I.

# INTRODUCTION

For the following reasons, the Court should deny plaintiff Donald J. Runnals' ("Runnals'") consolidated request for judicial notice and the three separate requests for judicial notice attached as exhibits to the consolidated request.

1.     Runnals has submitted the requests too late.  The Court has already taken the motions to dismiss Runnals' third amended complaint under submission.  Dkt. # 78.  By his requests for judicial notice, Runnals seeks to have the Court consider new "facts" and new legal theories. Defendants have no chance to brief or present oral argument regarding those new matters.

2.     The new "facts' are not appropriate for judicial notice.  Runnals presents unauthenticated snippets of documents he says but does not prove are accurate searches of databases, an FDIC response to a Freedom of Information Act request, and  the transcript of a deposition taken in 2010 in a New Jersey state court action.  None of these unauthenticated documents are "sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

3.     The new theories in support of which Runnals seeks judicial notice are unsound, as a matter of law and are unsupported by the facts of which Runnals seeks judicial notice.

For each of these reasons, the Court should deny Runnals' requests for judicial notice.

# II.

# THE REQUESTS ARE UNTIMELY

Though a court "may take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), "procedural fairness demands an opportunity to be heard on the propriety of taking judicial notice." *Gibbes v. Rose Hill Plantation Dev. Co*., 794 F. Supp. 1327, 1339 (D.S.C. 1992)

Runnals' late submission of his requests for judicial notice deprives defendants of that opportunity.  Briefing on the motions to dismiss the third amended complaint was completed on May 5, 2026.  Dkt. # 76.  By waiting until a month later to file his requests for judicial notice, Runnals deprived defendants of the chance to submit written argument on the new facts and legal

Opposition to Request for Judicial Notice

theories raised by his requests.

Worse, to accommodate Runnals' counsel's schedule, the parties stipulated to waive oral argument. Dkt. # 77. On May 22, the Court accepted that stipulation and took the motions to dismiss under submission on the papers and without argument. Dkt. # 78. As a result, defendants cannot even respond to Runnals' late submission orally.

From the Court's perspective, as well, the late submission of new facts and legal theories is disruptive, to say the least. Ordinarily, the record closes upon submission of a matter for the Court's decision—as happened here on May 22. The reason is simple. Reaching a correct decision is much harder if the record keeps changing while the decision-making process is underway. *See Fireman's Fund Ins. Co. v. Wilburn Boat Co.*, 259 F.2d 662, 664 (5th Cir. 1958) (judicial notice could not properly be taken long after the record had been closed).

Moreover, Runnals has offered no excuse for his late submission. None of the materials he has submitted are new. Hultman's deposition was taken in 2010. The FDIC responded to the FOIA request in 2017. The assignment was recorded in 2018. The court record searches could have been undertaken at any time thereafter.

The Court should deny Runnals' requests for judicial notice as untimely.

## III.

### THE COURT SHOULD DENY JUDICIAL NOTICE OF FACTS REGARDING AUTHORITY TO SIGN THE ASSIGNMENT

**A.    Runnals Improperly Requests Notice From Questionable Sources**

To be subject to judicial notice, facts must be subject to "accurate[] and read[]y determin-[ation] from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

With the sole exception of the 2018 MERS assignment, the sources on which Runnals relies for his judicial notice requests fall far short of the "accuracy cannot reasonably be questioned" standard.

For example, Exhibits 2 and 3 to Runnals' request for judicial notice regarding Jimilla Hicks' signature on the 2018 MERS assignment, Dkt. # 79-1, pp. 16, 18, purport to be the results of computer searches of government databases. But Runnals has submitted no evidence regarding

how those searches were conducted. Exhibit 3 is particularly questionable as it appears to be the result of a search conducted either on a private database or by a private program that accessed a public database. Runnals has not submitted any evidence to show that the private database is accurate or that the private program accurately searches the public database.

Exhibit 4 to the same request for judicial notice is an even more questionable source of information. Dkt. # 79-1, Ex. 4. It is an unsigned letter addressed in 2017 to someone other than Runnals' attorneys, Dkt. # 79-1, p. 20, accompanied by what purports to be a 2015 request by CIT Bank to renew the limited power of attorney powers of certain CIT Bank employees to act for IndyMac Bank, Dkt. # 79-1, pp. 21-23.[1] Neither the letter nor the 2015 request is authenticated. Neither is shown to have actually been produced by the FDIC.

Exhibit L to Runnals request for judicial notice of the Hultman MERS deposition purports to be 13 pages from a 170-page transcript of a deposition taken in a New Jersey state court case in 2010. Dkt. # 79-2, pp. 13-25. The transcript's reporter's certificate is unsigned. *Id.*, p. 25. There is no indication that the transcript was ever filed in the New Jersey case in which the deposition was supposedly taken. Runnals has supplied no evidence to show that the pages attached to his request for judicial notice are accurate copies of the purported transcript or that those pages accurately record the testimony given.

These are not sources of information whose accuracy cannot reasonably be questioned. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir. 1995).

**B.    Runnals Relies On Illogical, Disputable Inferences**

Not only are Runnals' sources of information questionable, but the information they purportedly supply do not support Runnals' new theory directly or by any logical inference.

Runnals' new theory is that Jimilla Hicks, who executed the 2018 MERS assignment was not authorized to sign that document on MERS' behalf and, therefore, Runnals now contends, the

---

[1]    The request's pages are marked page 40-42 at the top. Runnals says nothing about the larger document of which those pages are apparently a small part, choosing instead to have the Court speculate that those pages were part of an FDIC response to a FOIA request.

assignment was void.[2]  Dkt. # 79, pp. 2-3; Dkt. # 79-1, pp. 3-4, 6-8; Dkt. #79-2, pp. 8-9.

In support of that theory, Runnals first relies on the assignment itself.  It shows that Hicks executed the assignment as an Assistant Secretary of MERS.  Dkt. # 79-1, p. 13.  However, Runnals' further inference that Hicks was an Ocwen employee does not follow logically from either the return address or the computer imprint at the bottom of the assignment.  *See* Dkt. # 79-1, p. 4.

The address to which a document is to be returned after it is recorded says nothing about the employment or other relationship, if any, between the return addressee and the document's signer.  Frequently, title companies prepare real property documents, such as deeds, and list themselves as return addressees even though the companies have no employment or other relationship to the person signing as or for the deed's grantor.

That Hicks' initials are part of the computer imprint is equally unrevealing.  The initials could merely indicate that the document was prepared for Hicks' signature, not that she was an Ocwen employee, or that she prepared the document for her own signature.

Even less logical is the inference that Runnals seeks to draw from the "fact" that some unknown person was unable to find Hicks' name in searches allegedly conducted of the PACER database and the Contra Costa County Recorder's Office database.  According to Runnals, "Ms. Hicks's complete absence from federal court records is consistent with the conclusion that she was not a regularly-acting, authorized MERS corporate officer but rather an Ocwen document processor who signed one machine-generated document."  Dkt. # 79-11, 4:22-28.  "Consistency with" is not a sufficient basis for a logical inference.  The asserted fact—non-appearance in PACER records—is equally "consistent with" with Hicks' being a duly authorized MERS officer whose authority to act for MERS was never called into question in a publicly filed document in a federal lawsuit.  Runnals' leap of faith would be a logical inference only if there were evidence showing that all, or at least a substantial majority, of those authorized to sign for MERS were named in federal lawsuits.  Runnals supplies no such evidence.

---

[2]    Runnals' third amended complaint does not allege facts supporting this unauthorized signer theory.  Instead, it alleges that the 2018 MERS assignment is void because it transferred the deed of trust to U.S. Bank, as trustee after the REMIC trust's start-up date.  Dkt. # 64, 3:23-28, ¶¶ 19, 20, 59, 61, 79(c); *see also* Dkt. # 73, pp. 4-6.

Runnals' inference from Hicks' asserted non-appearance in the Contra Costa County Recorder's database is even less logical. Runnals does not say what was searched. Presumably, it was the grantor and grantee indexes, not the entire contents of the thousands of recorded documents. A grantor/grantee index search would not have disclosed Hicks' name no matter how many recorded assignments or other documents she signed as a MERS officer. The grantor index would list MERS, not the name of the person who signed for it.

Finally, Runnals' inference from the Hultman's purported deposition testimony is yet farther afield. Dkt. 79-2, pp. 7-8. The testimony was given in 2010. Hicks signed the assignment of Runnals' deed of trust in 2018. Runnals implicitly assumes that MERS did not update its practices or adopt additional resolutions authorizing new Assistant Secretaries during the eight intervening years. Runnals submits no evidence and states no reason to show that his illogical assumption is, in fact, true.

Presented with the same Hultman deposition testimony, a Texas Court of Appeals held it to be " less than a scintilla of evidence that Porter lacked the authority to assign the note and deed of trust on behalf of MERS." *Lowery v. Bank of Am., N.A.*, No. 04-12-00729-CV, 2013 WL 5762227, at *3 (Tex. App. Oct. 23, 2013). As the court explained:

> [T]he deposition appears to relate to whether MERS's board of directors had authorized Hultman to appoint employees of a law firm as assistant secretaries and vice-presidents of MERS. Hultman's testimony showed that MERS had disbanded and reformed twice since 1998. The first MERS board of directors authorized Hultman to appoint assistant secretaries and vice-presidents for the company. When MERS twice subsequently disbanded and reformed, the new boards adopted some of the prior boards' resolutions. Hultman testified he was not aware whether the newest board had specifically adopted the original resolution granting him the authority to appoint assistant secretaries and vice-presidents.

> To the extent the deposition can be construed to support Lowery's claim that Porter was not an authorized signatory for MERS, it shows that Hultman *may* not have had the authority to appoint officers for MERS because a new MERS board *may* not have adopted the resolution giving him that authority. However, Hultman's lack of knowledge about whether the board adopted that resolution is not evidence that the board actually did not adopt that resolution. Thus the deposition does not show that any appointments that Hultman made were invalid for a lack of authority. Additionally, the deposition does not show that Hultman was the sole person with the authority to appoint assistant secretaries or vice-presidents as

> authorized signatories for MERS. Nor does it show that those officers were the only "authorized signatories" able to assign instruments on MERS's behalf. The deposition does not even establish that authorized signatories needed to be specially appointed by the board or Hultman. Thus the deposition is no evidence that Porter was not an authorized signatory of MERS at the time of the assignment. We conclude the deposition is less than a scintilla of evidence that Porter lacked the authority to assign the note and deed of trust on behalf of MERS and that the deed of trust was invalidly assigned to BAC.

*Id.* at *2-3.

In short, none of the materials of which Runnals requests judicial notice logically support Runnals' new theory that Hicks lacked authority to sign the 2018 assignment as a MERS Assistant Secretary.

## C.    Runnals' New "Lack Of Authority To Sign" Theory Is Legally Unsound

In addition to its evidentiary and logical flaws, Runnals' new theory that the 2018 assignment is void because Hicks lacked authority to sign it for MERS is legally unsound as well.

### 1.    Ocwen's Employee May Serve As An Assistant Secretary Of MERS

Runnals is wrong in claiming that the assignment is void because it was "signed by an Ocwen employee purporting to act in a corporate capacity for a different entity (MERS) of which she was not an employee." Dkt. # 79-1, 3:23-26. Runnals is also wrong in asserting that California Corporations Code section 313 precludes "anyone signing on behalf of a corporation by which they are not employed." Dkt. # 79-1, 3:26-28. Section 313 says nothing of the sort.[3] Nor does Corporations Code section 312, which deals with appointment of corporate officers. It allows a corporation to appoint " officers with such titles and duties as shall be … determined by the board and as may be necessary to enable it to sign instruments." Like section 313, section 312 does not limit eligibility for officer status to the corporation's employees.[4] *See In re S.S. Retail*

---

[3]    Section 313 creates a conclusive presumption in favor of a third party without actual knowledge to the contrary that a contract or other written instrument is an authorized act of the corporation if it is signed by an officer in general charge of the corporation (chairman of the board, president, or vice president) and an officer in charge of the corporation's finances or records (secretary, assistant secretary, CFO, or assistant treasurer). *See Snukal v. Flightways Mfg., Inc.*, 23 Cal. 4th 754, 783-87 (2000).

[4]    The same is true of Delaware law under which MERS was incorporated. See 8 Del. Code § 142; *Haft v. Dart Grp. Corp.*, 841 F. Supp. 549, 569-70 (D. Del. 1993).

*Stores Corp.*, 211 B.R. 699, 702 (9th Cir. BAP 1997) (lawyer was corporation's officer though he received no compensation for his serving as its assistant secretary).

In fact, it is well known that "MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011); *see also Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 491 (Minn. 2009). And that practice has withstood challenge under California law. (*See Chua v. IB Prop. Holdings, LLC*, No. 11-cv-5894, 2011 WL 3322884, at *2 (C.D. Cal. Aug. 1, 2011) ("Plaintiffs have not identified a relevant legal authority prohibiting one individual from working for both CitiMortgage and MERS or from acting as an agent for both.").)[5]

Contrary to Runnals' contention, Dkt. # 79, 3:1-5, Dkt. 79-1, 3:28-4:2, neither *Diediker v. Peelle Fin. Corp.,* 60 Cal. App. 4th 288, 294 (1997) nor *Herrera v. Fed. Nat'l Mortgage Ass'n,* 205 Cal. App. 4th 1495, 1506 (2012) lend any support to Runnals' notions that Hicks was unauthorized to sign the 2018 assignment because she was an Ocwen employee as well as a MERS Assistant Secretary or that her supposedly unauthorized signature rendered the assignment void, rather than voidable.

**2.    An Unauthorized Signature Does Not Render An Assignment Void**

More fundamentally, Runnals' new theory is legally unsound because an instrument signed by an unauthorized agent may be ratified by the asserted principal and thus become fully effective. *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73(1972). Thus, such an instrument is not void, but merely voidable by the principal. *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 930, 93 (2016).

A borrower, such as Runnals, lacks standing to challenge a deed of trust assignment that is merely voidable. *Id.* at 936-937; *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802,

---

[5]    *Accord, Hackleman v. Provident Funding Assocs., LP,* No. 12-cv-6064, 2012 WL 12888841, at *2 (C.D. Cal. Dec. 13, 2012); *Quach v. Bank of Am., Nat. Ass'n,* No. 5:12-cv-5037 EJD, 2012 WL 4498873, at *4 (N.D. Cal. Sept. 28, 2012); *Bogosian v. CR Title Services, Inc.*, 2011 WL 2039368, at *1 (C.D. Cal. May 18, 2011)

Opposition to Request for Judicial Notice

811 (2016).

## IV.

## RUNNALS' OTHER THEORIES ARE EQUALLY UNSOUND

Runnals' request for judicial notice raised two other theories about the 2018 assignment's supposed invalidity. Both are as unsound legally as Runnals' new unauthorized signer theory discussed above.

### A.   MERS Properly Assigned Runnals' Deed Of Trust After IndyMac Was Closed

Runnals argues that "IndyMac's closure by the Office of Thrift Supervision on July 11, 2008 terminated any authority MERS had to act as IndyMac's 'nominee' from that date forward," so that even if an authorized signer for MERS, Hicks had no authority to execute the assignment in MERS' name in 2018. Dkt. # 79-1, 6:1-23, 7:19-24.

As already stated in the PHH Defendants' opening and reply memorandums, this theory is incorrect. Many cases have held that since the deed of trust appoints MERS as the nominee of not only the original lender but also its successors and assigns, MERS may continue to act in that capacity and assign the deed of trust after the original lender ceases to exist. *See* Dkt. # 71, 14:12-20 (citing cases); Dkt. # 74, 4:8-15.

The only authority that Runnals cites to the contrary is a Restatement section dealing with termination of agencies generally, not with MERS and MERS deeds of trust specifically. Dkt. # 79-1, 6:1-23, 7:19-24. Runnals does not attempt to distinguish the mountain of authority against him on this issue or to show why that authority is incorrect. The Court should follow the decisions cited in the PHH Defendants' opening memorandum, Dkt. # 71, 14:12-20, and reject Runnals' attempt to resurrect this bankrupt theory.

### B.   The Trustee's Passive Role Proves Nothing

In his final request for judicial notice, Runnals asks the Court to notice a letter he received from U.S. Bank National Association ("US Bank") and an accompanying brochure explaining that it does not service Runnals' loan and that in its capacity as trustee of the securitized trust which holds Runnals' note it has neither "the authority and responsibility to make decisions and take actions regarding individual properties in the Trust, including loan forbearances …." Dkt. # 79-3,

Opposition to Request for Judicial Notice

pp. 4-6/

This is hardly startling news. The basic structure of securitized mortgage trusts and the respective roles of the trustee and loan servicer were explained in a slew of law review articles published in the aftermath of the Great Recession. *See, e.g.,* Diane E. Thompson*, Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications,* 86 Wash. L. Rev. 755, 764-71 (2011); Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, 28 Yale J. on Reg. 1, 14-16, 23 (2011).

Runnals fails to explain why this well-known separation of responsibilities with respect to administering a securitized loan makes any significant legal difference or supports any claim alleged in Runnals' third amended complaint. Runnals mentions that US Bank cannot claim bona fide purchaser status. Dkt. # 79-3, 6:23-7:4. Bona fide purchaser status is a defense. At best, Runnals' argument about the separation of roles as between trustee and loan servicer might operate as a replication to that defense. But that is far down the road. At this stage of the proceedings, all that matters is whether Runnals has stated or can state a viable claim for relief, not what affirmative defenses US Bank might raise to any such claim. Runnals has not shown that US Bank's lack of authority or responsibility for conducting a foreclosure supports any of his claims.

## V.

## CONCLUSION

For the reasons stated above, the Court should deny Runnals' untimely requests for judicial notice and grant the PHH Defendants' motion to dismiss with prejudice. There is no reason to further continue this case, Runnals has trotted out one unsound theory after another. There is no reason to allow him any further opportunity to do so. Granting leave to amend would only increase this meritless litigation's expense and further delay its resolution without any likelihood that Runnals might miraculously discover a viable claim when all his many prior efforts have abjectly failed to do so.

DATED:  June 11, 2026

STINSON LLP

By: _____
       JAN T. CHILTON

Attorneys for PHH Mortgage Corporation, U.S. Bank National Association, as Trustee, Mortgage Electronic Registration Systems, Inc., and Western Progressive, LLC

## **PROOF OF SERVICE**

### **3:26-cv-00105-JD**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the City and County of San Francisco, State of California. My business address is 595 Market Street, Suite 2600, San Francisco, CA 94105.

On June 11, 2026, I served true copies of the following document(s) described as **OPPOSITION TO REQUEST FOR JUDICIAL NOTICE** on the interested parties in this action as follows:

| Attorney for Plaintiff:<br><br>Peter Winkler<br>Attorney at Law<br>104-A Main Street<br>Tiburon, California 94920<br>Telephone: 415.435.2677<br><br>Email: winklerlaw9@gmail.com | Attorney for Defendant Aldridge Pite LLP:<br><br>Jillian A. Kaiser<br>ALDRIDGE PITE, LLP<br>3333 Camino del Rio South, Ste. 225<br>San Diego, CA 92108<br>Telephone: (858) 750-7600<br><br>Email:  JKaiser@aldridgepite. om |
| --- | --- |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am a member of the bar of this Court.

Executed on June 11, 2026, at Memphis, Tennessee.

_Jan T Chilton_
_____
Jan T. Chilton

**SERVICE LIST**

**3:26-cv-00105-JD**